UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

DASHAUN OUTLAW,

                            Plaintiff,

          -v-

CITY OF NEW YORK *et al.*,

                           Defendants.

22 Civ. 9288 (PAE)

OPINION & ORDER

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

      Plaintiff Dashaun Outlaw brings claims under 42 U.S.C. § 1983, and New York State and City law, for, *inter alia*, false arrest, illegal search and seizure, excessive force, and failure to intervene against the City of New York (the "City") and several unidentified New York City Police Department ("NYPD") officers. His claims arise from an incident on December 31, 2021, in which he alleges that officers unlawfully entered and searched his apartment and handcuffed him. Dkt. 1 ("Compl.") ¶¶ 11–22.

      Pending now are two motions that arise from depositions taken by Outlaw's counsel of two NYPD detectives. The first is Outlaw's motion for leave to amend the Complaint with information from these depositions, including to name several previously unidentified NYPD officers as defendants, to add claims based on failure to document, and for declaratory and injunctive relief. Dkt. 40 ("Outlaw Br.") at 1, 7–8; *see* Dkt. 39. The second is a motion by the United States Marshals Service ("USMS"), a non-party, to strike the two depositions for all purposes, including striking the information derived from them that Outlaw proposes to include in an amended Complaint. Dkt. 50 ("USMS Br."). The basis of this motion is that Outlaw conducted these depositions in violation of the *Touhy* regulations adopted by the U.S.

Department of Justice ("DOJ"), 28 C.F.R. §§ 16.21 *et seq.*, compliance with which was required because the deponent NYPD officers were members of the Regional Fugitive Task Force ("RFTF"), a federal-state task force. USMS Br. at 3–4.

For the following reasons, the Court grants the USMS's motion to strike, and denies, without prejudice, Outlaw's motion for leave to amend the Complaint.

## I.  Background

### A.  The *Touhy* Regulations

Under the federal Housekeeping Statute, 5 U.S.C. § 301, "federal agencies may adopt procedures"—known as "*Touhy* regulations"[1]—"for responding to subpoenas and other requests for testimony or documents." *Monterey Bay Military Housing, LLC v. Ambac Assurance Corp.*, No 19 Civ. 9193, 2023 WL 3779338, at *4 (S.D.N.Y. May 25, 2023) (quoting *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, 474 F. Supp. 2d 75, 79 (D.D.C. 2007)). The DOJ has promulgated *Touhy* regulations which, in relevant part, prohibit a current or former employee, including officers on a joint task force in which the DOJ participates, *see* Justice Manual § 1-6.111; 28 C.F.R. § 16.21(b), from disclosing official information in federal and state proceedings in which the United States is not a party unless (1) the party is given case-specific authorization, *see id.* § 16.21(a), or (2) the DOJ has made a decision to share said information, *see id.* § 16.21(c).

The DOJ's *Touhy* regulations require that a party seeking official agency information through oral testimony either provide an affidavit or a statement containing a "summary of the testimony sought and its relevance to the proceeding." *Id.* § 16.22(c). The regulations set forth

---

[1] The term derives from the Supreme Court's decision in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

several factors the DOJ considers when determining whether, and, if so, to what extent, it will permit the requested disclosure. *Id.* § 16.26(a). "[T]he decision about production rests with the agency, based on the factors provided in [the agency's] *Touhy* regulations. Even if the information [the party] seeks is relevant to the underlying litigation, it is not automatically entitled to the [documents] it has requested." *Agility Pub. Warehousing Co. K.S.C.P. v. U.S. Dep't of Defense*, 246 F. Supp. 3d 34, 44 (D.D.C. 2017). "After exhausting agency remedies, the party may then seek judicial review of the agency decision via an Administrative Procedure Act action." *Pogue*, 474 F. Supp. 2d at 79–80 (citation omitted).

## B. Outlaw's Claims in This Case

Outlaw's Complaint, filed on October 29, 2022, alleges that, on December 31, 2021, he was living at 2101 Madison Avenue, Apartment 2A, in Manhattan. Compl. ¶ 11. He had invited persons initially identified as "Denzel" and "Marley," the latter of whom has since been identified as Christopher Jones, to his apartment. *Id.* ¶¶ 12–13, 16; *see* Dkt. 17 (confirming "Christopher Jones is the 'Marley' mentioned in the Complaint"). At approximately 2 p.m., several NYPD officers entered Outlaw's apartment, handcuffed him, searched his apartment, and arrested and removed Jones from the building. *Id.* ¶¶ 11–17. Outlaw alleges that the search damaged his belongings, including his clothing, furniture, television, and Xbox. *Id.* ¶ 18. Outlaw's Complaint brings federal claims under § 1983, and claims under state and local law, alleging various civil rights violations.

## C. Procedural History

On May 19, 2023, the City answered the Complaint. Dkt. 11. From June 9 to November 9, 2023, the City provided discovery pursuant to Local Rule 83.10(5). *See* Dkt. 41 ("Joubin Decl.") ¶¶ 17–39. Salient here, in November 2023, the City, in written disclosures in

3

this litigation, had notified Outlaw's counsel that members of the RFTF had participated in the entry and search. *Id.* ¶ 33. On December 13, 2023, Outlaw requested an extension of the deadline to file an amended Complaint to February 28, 2024, Dkt. 22, which the Court granted, Dkt. 23. On February 20, 2024, the City provided Outlaw with additional discovery, including the names of all officers that participated in Jones's arrest. Joubin Decl. ¶¶ 37–39; Dkt. 35 at 4.

On March 28, 2024, Outlaw sought leave to conduct, under Federal Rule of Civil Procedure 30(b)(6), a deposition of an NYPD official aimed at identifying the NYPD officers who had searched his apartment. Dkt. 25 ("3/28/24 Outlaw Letter"). On April 2, 2024, the City opposed the motion, proposing instead that Outlaw depose two NYPD officers present at Jones's arrest. Dkt. 26. The Court granted the City's request, and denied Outlaw's. Dkt. 27.

On April 25, 2024, Outlaw moved for leave to serve a *Touhy* request and subpoena on the USMS. Dkt. 28. Importantly, his motion solely sought documents pertaining to the December 31, 2021 incident; it did not seek deposition discovery. *See id.* ("Plaintiff's *Touhy* request / subpoena asks for all USMS documents pertaining to the apprehension of Christopher Jones . . . on December 31, 2021. The Fourth Amendment violations Plaintiff alleges in this lawsuit involve USMS members—specifically from the Regional Fugitive Task Force—acting alongside NYPD officers in apprehending Christopher Jones on that date."); *see also id.* ("Through this *Touhy* request, plaintiff seeks to learn the identities of all law enforcement officers who entered his apartment on December 31, 2021 so that he can accurately and timely amend the complaint to name them."). On April 29, 2024, the Court granted that motion. Dkt. 29.

On May 18, 2024, Outlaw sent the *Touhy* request to the USMS via certified mail. Joubin Decl. ¶ 53. Between May 30 and June 5, 2024, Outlaw and the USMS conferred about the

4

*Touhy* request for written discovery, but these discussions did not reach a resolution. *Id.* ¶¶ 54–55.

On June 6, 2024, Outlaw, without notice to the USMS or serving the agency with a *Touhy* request for oral testimony, conducted a one-hour deposition of Detective Alberto Torres. *Id.* ¶ 56.[2] On July 20, 2024, Outlaw informed the USMS that he intended to depose Detective John Cutrona on August 15, 2024, and, on that date, did so. *Id.* ¶ 63; USMS Br. at 2. Outlaw did not, however, serve a *Touhy* request on the USMS with respect to this testimony, or obtain the DOJ's authorization to take either detective's deposition. The transcripts of both the Torres and Cutrona depositions make clear that Outlaw's counsel was aware that the deponents had participated in the December 31, 2021 entry into and search of Outlaw's apartment in connection with their membership in the RFTF, a joint task force in which the USMS, a component of the DOJ, supervised. *See* Joubin Decl. Ex. L at 8–20; *id.* Ex. M at 7–9, 21–28.

On August 15, 2024, Outlaw and the USMS entered into a protective order with respect to the written discovery covered by Outlaw's May 18 *Touhy* request. Dkt. 32. The USMS thereafter granted, in part, Outlaw's *Touhy* request for documents. On August 28, 2024, in compliance with that request, the USMS provided Outlaw with a confidential list of NYPD officers who, as of December 31, 2021, were deputized Special Deputy U.S. Marshals and members of the RFTF. These included Detectives Torres and Cutrona. USMS Br. at 2; Joubin Decl. ¶¶ 62, 64.

---

[2] Later, on June 29, 2024, Outlaw provided the USMS with the transcript of Detective Torres's deposition. USMS Br. at 2.

### D. The Instant Motions

On September 13, 2024, in a joint status report, Outlaw sought authorization to file a first amended Complaint. Dkt. 35. The Court denied Outlaw's request, without prejudice to his right to file a motion for leave to do so. Dkt. 36. On September 27, 2024, Outlaw filed such a motion, a memorandum of law in support, and a declaration whose attached exhibits included (1) Exhibit K, the confidential list of Special Deputy U.S. Marshals, and (2) Exhibits L and M, the transcripts of the depositions of Detectives Torres and Cutrona, respectively. *See* Dkts. 39–41.

On October 1, 2024, the USMS opposed the motion in part, arguing that these exhibits should be filed under seal. Dkt. 43; *see* Dkt. 45. That day, Outlaw replied, taking no position concerning the sealing of the confidential list, but opposing filing the deposition transcripts under seal. Dkt. 44. The Court granted the USMS's request in part, directing that the confidential list be durably filed under seal and that, subject to further briefing, the deposition transcripts be filed under seal. Dkt. 46.

On October 7, 2024, the City opposed Outlaw's motion for leave to file an amended Complaint. Dkt. 47 ("City Br.").

On October 15, 2024, the USMS moved to strike the depositions of Detectives Torres and Cutrona. USMS Br. at 1, 3–4. On October 21, 2024, Outlaw opposed. Dkt. 53 ("Outlaw Opp.").

## II.  The USMS's Motion to Strike

"Whether to grant or deny a motion to strike is vested in the trial court's sound discretion." *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 15 (D. Conn. 2013) (citation omitted). Courts have the "inherent power to control their dockets" and "strike material from the docket . . . reflecting procedural impropriety or lack of compliance with court rules or orders."

6

*In re Certain Claims & Noticing Agents' Receipt of Fees in Connection With Unauthorized Arrangements With Xclaim Inc.*, 647 B.R. 269, 281 (Bankr. S.D.N.Y. 2022) (citation omitted). Striking is warranted where the materials at issue are "abusive or otherwise improper under the circumstances." *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, 9 Civ. 2669, 2015 WL 4757601, at *3 (S.D.N.Y. Aug. 12, 2015) (quoting *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 884 F. Supp. 2d 108, 115 n.5 (S.D.N.Y. 2012)) (granting motion to strike pursuant to the court's inherent authority). The "inherent powers" authorizing a court to strike improper materials derive "not [from] rule or statute but [from] the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)).

Separately, under Federal Rule of Civil Procedure 12(f), courts have the authority to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The rule affords courts wide discretion "whether to strike all or part of a pleading or attachment thereto." *Pogue*, 474 F. Supp. 2d at 79 (citing *Judicial Watch, Inc. v. Dep't of Commerce*, 224 F.R.D. 261, 263 (D.D.C. 2004) (collecting cases) and 2–12 Moore's Federal Practice–Civil § 12.37 (2006)). Some courts have treated "affidavits and declarations filed in support of technical pleadings" as "pleadings" under Rule 12(f), on the ground that there is no other "viable method for attacking materiality and pertinence defects in such documents," *Judicial Watch*, 224 F.R.D. at 263 n.1 (citation omitted), while others, in applying the rule, "have declined to strike documents other than pleadings," *United States ex rel. Yu v. Grifols USA, LLC*, 17 Civ. 2226, 2021 WL 4429375, at *1 (S.D.N.Y. Sept. 26, 2021) (collecting cases).

The parties here spar over whether the exhibits at issue—attachments to an affidavit submitted in support of a motion for leave to file a pleading, the amended Complaint—fall within the authority that the Federal Rules of Civil Procedure furnish to strike matters obtained in violation of *Touhy*.[3] Although it appears that Rule 12(f) does apply to the exhibits at issue, the Court need not resolve that question, because the Court's inherent power to strike improper materials clearly empowers it to strike these materials as fruits of Outlaw's noncompliance with the DOJ's *Touhy* regulations. The Court therefore exercises its discretion to strike these exhibits and, *sua sponte*, Outlaw's proposed amended Complaint, whose added components largely derive from facts gleaned in the unauthorized depositions. The Court further strikes the declarations by Outlaw's counsel to the extent that these reference the unauthorized information. *See e.g., Blatt v. City of New York*, No. 19 Civ. 1227, 2019 WL 1367605, at *3 (S.D.N.Y. Mar. 26, 2019) (striking "sensitive" exhibits attached to opposition brief); *Duttweiller v. Eagle Janitorial, Inc.*, No. 5 Civ. 886, 2009 WL 5171834, at *3 (N.D.N.Y. Dec. 22, 2009), *aff'd sub nom. Duttweiller v. Upstate Bldg. Maint. Cos., Inc.*, 407 F. App'x 552 (2d Cir. 2011) (striking plaintiff's counsel's affidavit for failure to comply with local rules); *Epstein v. Kemper Ins. Cos.*, 210 F. Supp. 2d 308, 314 (S.D.N.Y. 2002) (striking "inappropriate portions" of affidavit for failure to comply with federal and local rules).

In reaching this determination, it is notable that these depositions were acquired by Outlaw in blatant disregard of the *Touhy* regulations. Outlaw's counsel was demonstrably on notice not only of the existence of these regulations, but that they applied to the two deponents. Well before taking the depositions of the two NYPD detectives, who were deputized as Special

---

[3] Outlaw also contends that Rules 26 and 45 should govern *Touhy* disputes, but, as Outlaw concedes, these rules apply to motions to quash or compel, not motions to strike, which properly fall under Rule 12(f). Outlaw Opp. at 1–2.

8

Deputy U.S. Marshals, Outlaw had been notified that they had been part of the RFTF, a joint task force including DOJ (USMS) personnel. *See, e.g.*, Joubin Decl. ¶ 33 (City's November 9, 2023 disclosures referenced participating "members of the Regional Fugitive Task Force"); Dkt 24 ("3/8/24 Status Letter") at 2 ("[U]pon information and belief, it may have been the US marshals who entered plaintiff's apartment. Defendant City will not oppose any request that plaintiff makes to the Court seeking information from the US Marshals, including a *Touhy* request . . . ."); *id.* at 3 ("Plaintiff believes the most efficient path forward . . . would be to conduct depositions of two NYPD officers who defense counsel believes to have the best recollection of the incident and of their partnership with the U.S. Marshals . . . ."); 3/28/24 Outlaw Letter at 2 ("Plaintiff wishes to conduct a [Rule] 30(b)(6) deposition to understand the partnership between the NYPD and U.S. Marshals in conducting fugitive operations together."); Joubin Decl. Ex. E (the "*Touhy* Request") ("According to documents from the Manhattan [DA's] Office, members of the USMS, specifically the NY-NJ Regional Fugitive Task Force, worked with the NYPD during the alleged incident.").

Indeed, at the time he took the depositions, Outlaw's counsel was in the process with the USMS of pursuing *Touhy* authorization for written discovery. *See* Joubin Decl. ¶¶ 53–63; *Touhy* Request. From that process, Outlaw's counsel further was on notice that the USMS viewed the matter as implicating the DOJ's *Touhy* regulations. *See* Joubin Decl. Ex. I ("USMS Denial Letter") at 2 ("The protection of law enforcement privileged information is paramount to the Marshals Service. . . . Based on this [subpoena], the responsive information potentially would contain law enforcement sensitive information as well as privileged communications."). The USMS is thus correct to note:

> Plaintiff's counsel was aware of the *Touhy* process and aware from the Marshals Service's original *Touhy* denial letter that the agency was concerned about

9

protecting any privileged and/or law enforcement sensitive information involving the USMS task force and the December 31, 2021 law enforcement operation.

*See* USMS Br. at 4. Notwithstanding the evident obligation to undertake the *Touhy* process, Outlaw's counsel did not serve the USMS with a *Touhy* request for either deposition, as was required, or even provide the USMS with notice of the first deposition.[4]

The Court therefore exercises its authority to strike the two deposition transcripts, the proposed amended Complaint, and, to the extent they contain information derived from Exhibits M and L, the transmittal declarations to which the deposition transcripts are attached. The Court will not permit a party to gain litigation advantage by circumventing clearly applicable *Touhy* regulations. *See, e.g., Boca Raton Cmty. Hosp. v. Tenet Healthcare Corp.*, No. 5 Civ. 80183, 2006 WL 1523234, at *3 (S.D. Fla. Apr. 24, 2006) (striking declaration taken in noncompliance with the *Touhy* regulations "until either 1) [the agency] authorizes [the former employee's] . . . testimony pursuant to its *Touhy* regulations, or 2) [the agency] objects to that testimony, [and] plaintiff exhausts its administrative remedies"); *see also United States v. Chang*, No. 18 Cr. 681, 2024 WL 3567006, at *2 (E.D.N.Y. July 29, 2024) (quashing subpoenas for failure to comply with *Touhy* process); *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 19 MD 2885, 2022 WL 14049611, at *14 (N.D. Fla. Oct. 24, 2022) (deferring ruling on striking testimony until plaintiffs complied with the *Touhy* regulations and reopening discovery for the parties to do so).

---

[4] The USMS bears a degree of fault as to the second deposition, that of Detective Cutrona. As Outlaw notes, although he did not file the required *Touhy* request with respect to that deposition, he did notify the USMS in advance of his intent to depose Detective Cutrona. Outlaw Opp. at 3. The USMS, however, did not alert to the need for *Touhy* approval or to Outlaw's breach of the DOJ's *Touhy* regulations until after the deposition had been taken. Outlaw was, in any event, on notice of the requisite *Touhy* process prior to both depositions. *See supra* Section II.

### III. Outlaw's Motion for Leave to Amend the Complaint

It follows from the discussion above that Outlaw's motion for leave to file the proposed amended Complaint, which is based largely on the improperly secured depositions, must be denied.

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint shall be "freely" given when "justice so requires." But a "district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200–01 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "The non-moving party has the burden to show any prejudice of the proposed amendment." *Vasto v. Credico (USA) LLC*, No. 15 Civ. 9298 (PAE), 2016 WL 3926466, at *1 (S.D.N.Y. July 18, 2016) (citation omitted). However, "[w]here . . . a scheduling order governs amendments to the complaint . . . the lenient standard under Rule 15(a) . . . must be balanced against the requirement under [Federal] Rule [of Civil Procedure] 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009) (cleaned up). "Whether good cause exists turns on the 'diligence of the moving party.'" *Id.* at 335 (quoting *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2003)).

Outlaw urges that the more lenient standard under Rule 15(a), rather than the stricter one of Rule 16(b), should govern his motion for leave to amend, on the ground that "the Court never issued a Scheduling Order." Outlaw Br. at 8. That argument is weak. Although the Court did not issue a scheduling order when the case emerged from the District's mediation plan, Outlaw himself requested that the deadline for filing an amended Complaint be extended until February 28, 2024, Dkt. 22, and the Court so-ordered that motion, Dkt. 23. Outlaw did not

request any additional extensions of this deadline. Nor did the parties, pursuant to the Local Rule 83.10 Plan, "promptly request . . . an initial pre-trial conference" once "mediation . . . [proved] unsuccessful," which would have resulted in a scheduling order. *See* Local Rule 83.10(10); 3/8/24 Status Letter at 2–3. In these circumstances, the Court's granting of the extended deadline requested by Outlaw qualifies as a scheduling order. *See, e.g., 380544 Canada, Inc. v. Aspen Tech., Inc.*, 7 Civ. 1204, 2011 WL 4089876, at *3 (S.D.N.Y. Sept. 14, 2011) (holding court orders "act[ed] as the Rule 16 scheduling order"); *Volunteer Fire Ass'n of Tappan, Inc. v. Cnty. of Rockland*, No. 9 Civ. 4622, 2010 WL 4968247, at *3 (S.D.N.Y. Nov. 24, 2010) ("Rule 16(b) should apply. The Court by verbal order and then by endorsement set a deadline for the filing of an Amended Complaint, and it is immaterial that that deadline was not part of a formal Rule 16 scheduling order.")

In any event, Outlaw's motion fails under either standard. Viewed under Rule 16(b), Outlaw has not shown the good cause required to permit the proposed amendment to be filed seven months after the extended deadline for an amendment that the Court set at his request. Quite to the contrary, the record, reviewed above, reflects that Outlaw resorted to improper means—two depositions taken in violation of the *Touhy* process—to secure the bulk of the information on which the proposed amendments are based. *See, e.g., DeCastro v. City of New York*, No. 16 Civ. 3850, 2020 WL 4932778, at *11 (S.D.N.Y. Aug. 24, 2020) ("Even if good cause is established, however, a court may deny a motion to amend if the proposed amendment 'would be . . . otherwise improper . . . .'" (quoting *Youngers v. Virtus Inv. Partners Inc.*, No. 15 Civ. 8262, 2017 WL 5991800, at *6 (S.D.N.Y. Dec. 4, 2017))); *see also 380544 Canada, Inc*, 2011 WL 4089876, at *3 (collecting cases) ("[W]here the substance of the proposed amendment

12

was known to the movant prior to the deadline for amending pleadings, but the movant nevertheless failed to act, courts have denied leave to amend under Rule 16.").

Were Outlaw's motion governed solely by Rule 15, the Court would still deny it. Insofar as Outlaw used improper means to obtain most information on which the amended Complaint is based—and to the extent he does not recite an independent basis for this information—"justice" does not "require" permitting the amendment. *See, e.g.*, *Reed v. City of New York*, No. 20 Civ. 8352, 2022 WL 17095047, at *3 (S.D.N.Y. Nov. 21, 2022) (denying leave to add previously unidentified NYPD officer under Rule 15 due to unwarranted delay without a reasonable explanation); *Ramsay-Nobles v. Keyser*, No. 16 Civ. 5778, 2018 WL 6985228, at *7 (S.D.N.Y. Dec. 18, 2018) ("Justice does not require that Defendants be permitted, at this late date and after discovery," to amend their pleading). And insofar as there is information Outlaw obtained independent of the depositions, he has not shown a good reason for not timely seeking an extension of the deadline to file an amended Complaint. It appears, for example, that Outlaw knew the identities of the RFTF members some seven months before the extended deadline to amend. He could have met that deadline by adding these names in an amended Complaint, or sought an extension of that deadline to enable further discovery as to the roles played by each member. The Court has repeatedly granted Outlaw's requests for additional time. *See* Dkts. 12, 22; *see also* Dkt. 35 at 4 n.4 (joint status letter in which Defendant City noted that Outlaw "had all of their identities seven months ago and, at that time, was well aware that the RFTF included US Marshals"). Outlaw's disobedient actions reflect, at a minimum, undue delay, if not bad faith, alone warranting denial of leave to amend under Rule 15. *See McCarthy*, 482 F.3d at 200–01.

The Court will not permit a litigant to capitalize on a knowing disregard of agency *Touhy* regulations. Authorizing this would incentivize others similarly to disregard these rules. The Court accordingly denies Outlaw's motion for leave to file the proposed amended Complaint.

## CONCLUSION

For the foregoing reasons, the Court grants the USMS's motion to strike and denies Outlaw's motion for leave to amend his Complaint. The Clerk of Court is respectfully directed to terminate the motions pending at Dockets 39, 43, and 50, and to place under seal Exhibit 1, attached to Docket 35; Exhibit A, attached to Docket 41; Exhibits K, L, and M, attached to Docket 48; and the declarations accompanying Dockets 41 and 48.

The Court will, however, give Outlaw a brief period of 30 days to attempt to obtain—*nunc pro tunc*—*Touhy* approval from the DOJ for the two depositions or portions thereof. The Court expects Outlaw to file any such application *urgently* (*i.e.*, within three business days), and urges the DOJ to act promptly on any such application. In the event Outlaw obtains such approval, the Court would then entertain a motion for leave to amend the Complaint to add averments consistent with the DOJ's authorization.

The Court will therefore stay further litigation in this matter for 30 days, until December 19, on which date the parties are to submit a joint letter setting out whether Outlaw sought such authorization, and the outcome of any such application. For avoidance of doubt, the Court's intention is that this stay of litigation activity will extend for 30 days and no more.

Should Outlaw not obtain *Touhy* authorization within that time period, Outlaw should not expect the Court to entertain a renewed motion to amend the Complaint.

After 30 days, the Court directs the parties to submit a proposed schedule, anticipating the close of fact discovery at the end of February 2025, and a case management conference approximately four weeks thereafter.

SO ORDERED.

                                                                            *Paul A. Engelmayer*
                                                                   PAUL A. ENGELMAYER
                                                                   United States District Judge

Dated: November 19, 2024
       New York, New York